IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ESTATE OF CAPTAIN DAVID )
JOHNPAUL THOMPSON, by and )
through EMILY THOMPSON, )
Executor, et al., )
　)
　　　　Plaintiffs, )
　) 1:11CV547
　v. )
　)
MISSION ESSENTIAL PERSONNEL, )
LLC, )
　)
　　　　Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiffs filed their initial complaint in this matter on July 11, 2011, asserting wrongful death, negligence, loss of consortium and breach of contract claims against Defendant Mission Essential Personnel, LLC ("MEP"). (Docket Entry 1.) The matter is before the court on Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (Docket Entry 10.) Plaintiffs have filed a response in opposition to this motion. (Docket Entry 16.) On August 14, 2013, a hearing was held regarding Defendant's motion. The matter was taken under advisement. For the following reasons, the court will recommend that Defendant's motion to dismiss be granted and that the action be transferred to the Eastern District of Virginia pursuant to 28 U.S.C. § 1691.

I.  **FACTUAL BACKGROUND**

Plaintiffs are Emily Thompson as the executor for the Estate of Captain David JohnPaul Thompson, Mark Decoteau as the executor for the Estate of Tactical PSYOPS Teams Specialist Marc P. Decoteau, and Chief Warrant Officer Thomas Russell and Tina Russell, individually and as parents and next friends of their minor children, SKR, ATR and ARR. (Compl. ¶¶ 2-4, Docket Entry 1.) Captain Thompson and Chief Warrant Officer Thomas Russell were deployed with their division of the United States Special Forces to Afghanistan. (*Id.* ¶ 1.) Marc P. Decoteau was a United States Army Specialist who was also deployed to Afghanistan. (*Id.* ¶ 4.) Captain Thompson and Specialist Decoteau were killed on January 29, 2010, when Nasir Ahmadi, a linguist employed by Defendant, opened fire on the base of Sayed Abad near the office of the team's Tactical Operations Center. (*Id.* ¶¶ 33-36.) Chief Russell suffered severe injuries during the incident. (*Id.*)

Defendant is an Ohio limited liability company based in Columbus, Ohio. (Decl. of Marc D. Peltier ¶ 8, Docket Entry 11-1.) MEP is in the specialized business of recruiting, vetting and training qualified linguists who are then deployed overseas. (Compl. ¶¶ 5, 7.) A number of MEP's executives are located in its National Capital Region headquarters in Chantilly, Virginia. (Peltier Decl. ¶ 10.) Defendant employs more than 7,000 professionals around the world. (*Id.* ¶ 7.) Defendant concedes to having, at most, eight employees who were permanently assigned locations in North Carolina from 2006 through 2011, and to having approximately one hundred and eighty-three employees temporarily assigned to military bases in North Carolina at varying times and duration. (Def.'s Reply at 4, Docket Entry 19; *see also* Def.'s Ex. E, App. A, Docket Entry 19-1.) A recruiter for Defendant also

2

worked from his North Carolina home. (*Id.*; *see also* Def.'s Ex. E, App. A at 21.) According to evidence provided by Plaintiffs, Defendant has provided support for several Army projects at Fort Bragg and Camp MacKall for periods ranging from a few days to two years. (Pls.' Mem. in Opp'n to Mot. to Dismiss at 4, Docket Entry 16; Ex. C at 5, Docket Entry 17-3.)

Furthermore, the record reflects that, from 2006 to 2011, Defendant received approximately $6.2 million in revenue for task orders completed in North Carolina. (Ex. E at 9-12, Docket Entry 19-1.) Defendant's global revenue from 2006 to 2011 was almost $2 billion, and its revenue for work completed in the United States during the same period was approximately $184 million. (Ex. S at 3-4, Docket Entry 20-1; Ex. G, Peltier Reply Decl. ¶ 7, Docket Entry 19-3.) Plaintiffs assert that the amount of revenue Defendant earned in North Carolina supports a finding that its contacts with the state were systematic and continuous. (Pls.' Mem. in Opp'n to Mot. to Dismiss at 13-16, Docket Entry 16.) Defendant contends that its revenue earned for performance in North Carolina represents less than 1 percent of the MEP's global revenue and only 3.4 percent of its total revenue in the United States. (Def.'s Reply at 4.)

Plaintiffs assert that from January 2010 until January 2012, Defendant advertised having an office in North Carolina, specifically Fayetteville, North Carolina on its website. (Pls.' Mem. in Opp'n to Mot. to Dismiss at 7; *see also* MEP's Website, Ex. H, Docket Entry 17-8.) Plaintiffs also state that Defendant admitted in an answer filed in a 2010 action in federal court in Virginia to having a major office in Fayetteville, North Carolina. (*Id.*; *see also* Ex. I ¶ 19, Docket Entry 17-9.) From January 2008 to 2010, Defendant used North

3

Carolina in a nationwide recruiting campaign. (*See* Recruiting Advertisements, Ex. E, Docket Entry 17-5.) Defendant also made public announcements stating it had a major office in Fayetteville, North Carolina. (*See* MEP Press Release, Ex. F, Docket Entry 17-6.) Defendant admits that it is registered to do business in the state and appointed an agent for service within the state.[1] (Def.'s Mem. at 14). Plaintiffs assert that Defendant utilized rooms at the Candlewood Suites in Jacksonville, North Carolina to house its employees. (Pls.' Mem. in Opp'n to Mot. to Dismiss at 10; Candlewood Documents, Ex. R, Docket Entry 18-9.) Defendant argues that it does not have an office in North Carolina. (Def.'s Reply at 4.) Defendant states that it does not own, lease or rent any property in North Carolina. (Peltier Decl. ¶ 18, Docket Entry 11-1.) However, Defendant admits to providing hotel rooms for its linguist employees while they were temporarily assigned to military bases within the state. (Def.'s Reply at 4; *see also* Ex. G, Peltier Reply Decl. ¶ 3, Docket Entry 19-3.) Additionally, Defendant asserts that MEP's website had previously incorrectly listed North Carolina as a state in which it had an office location. (Peltier Decl. ¶ 20; Docket Entry 11-1.)

## II. DISCUSSION

Defendant has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. On a Rule 12(b)(2) motion, a plaintiff has the burden "to prove grounds for jurisdiction by a preponderance of the evidence." *Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993) (citing *Combs v. Bakker*, 886 F.2d 673, 676

---

[1] A corporation's registration to do business in the state alone is not the deciding factor on which jurisdiction should be determined. *Ratliff v. Copper Laboratories Inc.*, 444 F.2d 745, 748 (4th Cir. 1971). In *Ratliff*, the corporation did not have an office, any real or personal property in the state. *Id.* It did not have a bank account or advertise within the state. *Id.* The court determined the mere fact of registration was insufficient to determine jurisdiction. *Id.*

4

(4th Cir. 1989)). However, where the court does not conduct an evidentiary hearing and relies only on the pleadings and affidavits, a plaintiff need only make a *prima facie* showing of jurisdiction. *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). The district court, in considering such a motion, must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

The court must perform a two-step analysis when determining if it has personal jurisdiction over a non-resident defendant. *Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). "First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." *Id.* North Carolina's long-arm statute states that the state has jurisdiction over a defendant "engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise." N.C. Gen. Stat. § 1-75.4(1)(d) (2013). North Carolina's long-arm statute "has been interpreted to extend to the outer limits allowed by the Due Process Clause." *Le Bleu Corp. v. Standard Capital Grp., Inc.*, 11 F. App'x 377, 379 (4th Cir. 2001). "Thus, the dual jurisdictional requirements collapse into a single inquiry as to whether the defendant has such 'minimal contacts' with the forum state that 'maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Nolan*, 259 F.3d 209, 215 (4th Cir. 2001) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Second, the court must determine that the exercise of jurisdiction complies with the requirements of the Due Process Clause. "Due process requires that in order to subject a

5

defendant to personal jurisdiction, the defendant must have 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993) (quoting *Int'l Shoe*, 326 U.S. at 316). "These contacts must be of such a level that they are equivalent to physical presence in the forum state so that it would be fair to hale a defendant into court in the forum based on any claim raised against the defendant no matter where the facts underlying the claim arose." *Lab. Corp. of Am. Holdings v. Schumann*, 474 F. Supp. 2d 758, 761 (M.D.N.C. 2006) (citation omitted).

Since *International Shoe* was decided, courts have distinguished between general and specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011). Specific, or case-linked, jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy' . . . that takes place in the forum State and is therefore subject to the State's regulation."[2] *Id.* (quoting Von Mehren & Truatman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv. L. Rev. 1121, 1136 (1996)). General jurisdiction, on the other hand, may be asserted over a corporation of another state "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 131 S. Ct. at 2851 (citing *Int'l Shoe*, 326 U.S. at 317). Consistent with the parties' briefs and arguments, the Court will focus its analysis on whether MEP's contacts with North Carolina are sufficient to confer general jurisdiction.

---

[2] The facts of this case do not support the exercise of specific jurisdiction as the incident giving rise to the litigation occurred on a military base in Afghanistan. (Compl. ¶¶ 33-37.)

6

*General Jurisdiction – Minimum Contacts*

A court will have general jurisdiction when the defendant corporation's continuous "operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Id.* In other words, general jurisdiction depends on a defendant's contacts with the forum state unrelated to the claims at issue. *See Helicopteros Nationales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15, n. 8, n. 9 (1984). The "threshold level for minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction." *ESAB Grp. Inc. v. Centricut Inc.*, 126 F.3d 617, 623 (4th Cir. 1997). "The paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear*, 131 S. Ct. at 2853-54.

The court must consider the type of interactions with the forum state in order to determine if sufficient contacts exist to establish general jurisdiction over foreign corporations. *Id.* "A corporation's 'continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Id.* at 2856 (quoting *Int'l Shoe*, 326 U.S. at 318). Courts have considered factors such as whether the directors conducted meetings, business correspondence, banking, stock transfers, payment of salaries and the purchase of machinery within the forum state. *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 445 (1952); *Goodyear*, 131 S. Ct. at 2853-54.[3]

---

[3] Plaintiffs' reliance on *Boon Partners v. Advanced Fin. Concepts*, to assert that this court should find substantial activity "if the aggregate contacts are substantial and continuous," is misplaced. (Pls.' Mem. at 13.) In *Boon Partners*, the court discussed that the state can use an "aggregate of contacts

7

*Fair Play and Substantial Justice*

After analyzing the defendant's contacts, a court must consider whether those contacts with the forum state are sufficient to exercise jurisdiction over the defendant and would comply with the requirement of "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (citing *Int'l Shoe*, 326 U.S. at 320). As stated by the Fourth Circuit Court of Appeals:

> In determining whether jurisdiction is constitutionally reasonable, we may evaluate the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Nolan*, 259 F.3d at 217 (citing *Burger King*, 471 U.S. at 477). The purpose of the reasonableness analysis is to ensure that jurisdictional rules are not "employed in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent." *Burger King*, 471 U.S. at 478 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972).

---

with the United States" to obtain personal jurisdiction over a foreign defendant not incorporated in the United States utilizing the national contacts theory. 917 F.Supp. 392, 397 (E.D.N.C. 1996). In that case the court stated that "the national contacts theory requires a due process analysis controlled by the Fifth Amendment, rather than the Fourteenth Amendment." *Id.* (citing *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 293-94 (3rd Cir. 1985). "[T]he Fifth Amendment does not also require an examination of the fairness of forcing a defendant to litigate in a particular state because the encroachment by one state upon the sovereignty of another is not at issue." *Id.* (citation omitted.)

*Analysis*

Plaintiffs argue four primary reasons to support this Court's exercise of general jurisdiction over MEP: (1) Defendant had numerous employees working within the state; (2) Defendant earned substantial revenue through its involvement in North Carolina; (3) Defendant advertised to the public as having a "major office in North Carolina;" and (4) Defendant had been "doing business" within the forum state.

First, Plaintiffs assert that this court has general jurisdiction based on the employees who work in North Carolina. (Pls.' Sur-Reply in Opp'n to Def.'s Mot. to Dismiss at 7, Docket Entry 20.) MEP contracts to perform duties in connection with military bases, some of which are located in North Carolina. (Def.'s Reply at 3.) Most of MEP's employees are transient and are only present in North Carolina for training purposes. (*Id.*) Therefore, Defendant's employees being present in the forum state for training is insufficient to establish general jurisdiction. *Helicopteros*, 466 U. S. at 416. Furthermore, Plaintiffs' assertion that there were full-time employees that were residents of North Carolina is also insufficient to establish general jurisdiction. The Fourth Circuit has previously addressed the issue of in-state residents. *See Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993) (declining Maryland general jurisdiction where a company had seventeen to twenty-one employees that were residents in the state and a district manager.)

Next, Plaintiffs assert that the revenue Defendant earns in North Carolina and the number of employees that are employed within the state support the argument that MEP is a major employer in North Carolina. The Court notes that Defendant's revenue earned from performance in North Carolina represents less than 1 percent of the company's total revenue

9

and approximately 3.4 percent of its United States revenue. (Def.'s Reply at 3.) In *Nichols*, the court looked at the amount of money as a factor in their determination. *Nichols*, 991 F.2d at 1200. The Fourth Circuit found that Maryland lacked jurisdiction over a foreign corporation which earned between nine million and thirteen million dollars in annual sales in Maryland representing two percent of the company's overall revenue. (*Id.*) Since the decision in *Nichols*, the bar for determining general jurisdiction has been raised to a test of whether "the defendant is fairly regarded as being at home." *Goodyear*, 131 S. Ct. at 2853-54. While Defendant did derive revenue from interactions in North Carolina, those activities do not rise to the level of MEP being "at home" in this State.

Plaintiffs assert that the percentage of overall revenue is immaterial and cite several cases in support of this proposition. The analysis in the cases upon which Plaintiffs rely, however, is dependent on Virginia's long-arm statute which provides that the state may exercise jurisdiction over foreign corporations "'causing injury in this State to any person . . . [who] engages in any other persistent course of conduct, or derives *substantial revenue* from goods used or consumed or services rendered in this State.'" *Ajax Realty Corp. v. J.F. Zook, Inc.*, 493 F.2d 818, 821 (4th Cir. 1972) (quoting Va. Code Ann. § 8-81.2 (a)(5)) (emphasis added); *accord Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1569 (Fed. Cir. 1994); *see also* Va. Code Ann. § 8.01-328.1 (West 2009) (current Virginia Long-Arm Statute). These holdings are limited to assessing if a foreign corporation earned substantial revenue in Virginia, not whether there were substantial contacts with the forum state. *Id.* Therefore, Plaintiffs reliance upon them is misplaced.

Case 1:11-cv-00547-JAB-JLW   Document 28   Filed 11/14/13   Page 10 of 15

Plaintiff's reliance on *Lakin v. Prudential Securities, Inc.*, 348 F.3d 704 (8th Cir. 2003) is likewise unavailing. The *Lakin* court found that the percentages generally were irrelevant. *Id.* at 709. The court, focusing on the underlying source of contacts within the forum state, found that the defendant's contacts were substantial because the defendant had ten million dollars in liens on thousands of pieces of real property in Missouri. *Id.* at 709-10. The court also found that Missouri had general jurisdiction because the defendant would rely on Missouri's courts to enforce liens with Missouri residents. *Id.* at 710. The court's analysis in *Lakin*, however, is not binding on this court. The Fourth Circuit has analyzed the percentage of revenue earned within the forum state compared to the company's overall percentage earned as a factor in determining if the forum has general jurisdiction. *Nichols*, 991 F.2d at 1200 (finding that where purchases are "too insignificant" when considered as a percentage of a corporation's total purchases, general jurisdiction not present).

Plaintiffs assert that MEP should be subject to general jurisdiction because Defendant stated on its website and in court that Defendant had a "major office in North Carolina." When analyzing general jurisdiction, the court must consider the evidence of Defendant's business interactions within the state and determine if those actions would be considered a "major office." In *Perkins*, the defendant's president kept company files, supervised all his employees and conducted all company business from an office in Ohio which gave the state enough contacts to conclude that the company was subject to general jurisdiction. *Perkins*, 342 U.S. at 447-448. Here, Defendant has not established a permanent office within the state. Defendant utilizes space within the military installations in which it is assigned and it rented suites at a local hotel, Candlewood, while its employees were being

11

trained. Although most, if not all, of Defendant's customers are government or military organizations, it bears noting that if any potential customer, whether government or individual, searched for an office or a representative of MEP in North Carolina, they would most likely not find one. Instead, the website directs users to contact information for MEP in either Ohio or Virginia. All of these actions are inconsistent with a business that has a major office in the state to establish general jurisdiction despite Defendant's statements advertising a "major office" in North Carolina and its statement to the Virginia court that it had an office in North Carolina.

Plaintiffs also argue that Defendant conducted sufficient business in this state to establish general jurisdiction. Plaintiffs rely on *Tuazon v. R.J. Reynolds Tobacco Company*, 433 F.3d 1163 (9th Cir. 2006) which found that a North Carolina company was subject to general jurisdiction in the state of Washington. *Tuazon* is distinguishable from the present case because the Ninth Circuit relied on Washington's service of process statute to determine if general jurisdiction applied. *Id.* (citing Wash. Rev. Code § 4.28.080(10)). The Washington statute allows the state to have general jurisdiction over a corporation that is "'doing business' in the state." *Tuazon*, 433 F.3d at 1169 (citing *Crose v. Volkswagonwerk AG*, 88 Wash. 2d 50 (1977)). Therefore, the Court only considered if the foreign corporation's conduct was sufficient to conclude it was "doing business" in the state and not whether there were substantial contacts within the forum state to comply with the requirements of Due Process. Unlike the state of Washington, North Carolina's long-arm statute only states it has jurisdiction over a defendant "engaged in substantial activity within this State, whether

such activity is wholly interstate, intrastate or otherwise." N.C. Gen. Stat § 1-75.4(1)(d) (2013). Therefore, Plaintiffs' reliance upon *Tuazon* is unavailing.

In view of the high standard set by the Supreme Court and the Federal Circuit, the presence of jurisdiction in the instant case is admittedly a close question. Based upon the facts presented, however, Plaintiffs have not demonstrated by a preponderance of the evidence that this court has personal jurisdiction over Defendant. While not dispositive, the fact that MEP has derived such a small percentage of its total revenue from work performed in North Carolina certainly carries much weight. Defendant admittedly has contacts with the forum state that are more significant than simple solicitation, yet those contacts are insufficient to qualify North Carolina as Defendant's place of business or a place where Defendant is "fairly regarded as being at home." *Goodyear*, 131 S. Ct. at 2853-54. Therefore, there are insufficient minimum contacts by Defendant to be deemed systematic and continuous.[4] *Id.* Hence, for the foregoing reasons, the court concludes that Defendant is not subject to the personal jurisdiction of this court.

*Transfer Pursuant to 28 U.S.C. § 1631*

If a district court finds that it lacks jurisdiction over a case "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed. . . ." 28 U.S.C. § 1631. A district court may, on its own initiative, transfer an action to cure want of jurisdiction. *See Halim v. Donovan*, No. 12-00384 (CKK), 2102 WL 3291830, at * 2 (D.D.C. July 1, 2013) ("While a

---

[4] Since there are insufficient minimum contacts to warrant exercise of personal jurisdiction, it is not necessary for this Court to address the factors of "fair play and substantial justice." *See Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir. 1994).

Court may on its own initiative transfer an action under 28 U.S.C. § 1631, the law of this Circuit also holds that *sua sponte* transfers pursuant to 28 U.S.C. § 1631 are committed to the discretion of the District Court where no party has moved to transfer a case brought in the wrong jurisdiction.")(internal quotation and citation omitted). "The phrase 'if it is in the interest of justice' relates to claims which are nonfrivolous and as such should be decided on the merits." *Reaves v. Hagel*, No. 5:12-CV-795-FL, 2013 WL 5674981, at *3 (E.D.N.C. Oct. 17, 2013). "Plaintiff's erroneous filing in the wrong court is 'just the type of good faith mistake that Congress intended for 28 U.S.C. § 1631 to remedy." (citing *McCook Metals LLC v. Alcoa, Inc.*, 249 F.3d 330, 334 (4th Cir. 2001).

Here, Defendant concedes that jurisdiction would be proper in the Eastern District of Virginia. (*See* Def. Mem. at 15, Docket Entry 11.) Defendant's National Capital Region Headquarters is located in Virginia and many of the potential witnesses are located in that state. Plaintiffs' claims are nonfrivolous and clearly should be decided on the merits. While Plaintiffs erred in determining the proper district in which to file, to dismiss the case and require Plaintiffs to start over in another district would penalize Plaintiffs unfairly. As such, this court finds that it is in the interest of justice to transfer the case pursuant to 28 U.S.C. § 1631 to the Eastern District of Virginia, where Defendant's National Capital Region Headquarters are located.

### III.  CONCLUSION

Careful consideration of the record in this case compels the conclusion that Defendant did not purposefully avail itself of the privilege of conducting activities in the State of North Carolina. This Court finds that Defendant's contacts, even taken in the light

14

Case 1:11-cv-00547-JAB-JLW  Document 28  Filed 11/14/13  Page 14 of 15

most favorable to Plaintiff, demonstrate minimal relation to the State of North Carolina and are insufficient to warrant a finding of personal jurisdiction. Accordingly, the Court finds dismissal is appropriate. However, as acknowledged by Defendant and in the interest of justice, personal jurisdiction in this matter would lie in the Eastern District of Virginia. Therefore, **IT IS RECOMMENDED** that Defendant's motion to dismiss for lack of personal jurisdiction (Docket Entry 10) be **GRANTED** and this action be **TRANSFERRED** to the Eastern District of Virginia.

Joe L. Webster
United States Magistrate Judge

November 14, 2013
Durham, North Carolina